IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JAMES B. MORRIS,

       Plaintiff,

                                 CV 3:09-CV-620-PK

                                 OPINION AND
v.                                 ORDER

MICHAEL C. ZUSMAN, SUSSMAN
SHANK LLP, NENA COOK, JEFF D.
BRECHT, GRENLEY, ROTENBURG,
EVANS, BRAGG & BODIE, P.C., and
GARY I. GRENLEY,

       Defendants.

PAPAK, Magistrate Judge:

       Plaintiff James B. Morris filed this legal malpractice action against his former attorneys,

defendants Evans & Zusman, PC, Michael C. Zusman, Sussman Shank LP ("Sussman Shank"),

Nena Cook ("Cook"), Jeff D. Brecht ("Brecht" and, collectively with Sussman Shank and Cook,

the "Sussman Shank defendants"), Grenley, Rotenberg, Evans, Bragg & Bodie, P.C. ("Grenley

Rotenberg"), and Gary I. Grenley ("Grenley" and, collectively with Grenley Rotenberg, the

"Grenley Rotenberg defendants"), on June 4, 2009.  On July 26, 2011, based on the parties'

stipulation for dismissal, the court dismissed Evans & Zusman as a defendant in this action.  This

court has jurisdiction over Morris' action pursuant to 28 U.S.C. § 1332(a), based on the complete

diversity of the parties and the amount in controversy.

Now before the court are Zusman's and the Sussman Shank defendants' motion (#61) for

summary judgment and the Grenley Rotenberg defendants' motion (#68) for summary judgment.

I have considered the motions, oral argument on behalf of the parties, and all of the pleadings on

file.  For the reasons set forth below, the Grenley Rotenberg defendants' motion is denied, and

Zusman's and the Sussman Shank defendants' motion is granted in part and denied in part, as set

forth below.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Fed. R. Civ. P. 56(c).  Summary judgment is not proper if material factual issues

exist for trial.  *See, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 318, 322 (1986); *Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir.

1995), *cert. denied*, 116 S.Ct. 1261 (1996).  In evaluating a motion for summary judgment, the

district courts of the United States must draw all reasonable inferences in favor of the nonmoving

party, and may neither make credibility determinations nor perform any weighing of the

evidence.  *See, e.g.*, *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554-55 (1990); *Reeves v.

Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000).

## FACTUAL BACKGROUND[1]

**I.      Formation of RaveSim, Inc.**

Plaintiff Morris was the founder and CEO of Simutech Corporation ("Simutech").  In

1999, Simutech introduced an integrated circuit prototyping system it called "RAVE."  Shortly

thereafter, in November 1999, Simutech and Cadence Design Systems, Inc. ("Cadence"), entered

into an agreement (the "Simutech/Cadence agreement") pursuant to which Simutech licensed

Cadence to resell RAVE systems manufactured by Simutech for that purpose.  Simutech began

experiencing financial problems in 2001, and on June 30, 2001, the Simutech/Cadence

Agreement was terminated by the parties thereto.  According to Morris, the financial difficulties

Simutech experienced at that time were caused by Cadence's misappropriation of Simutech's

trade secrets and breach of the Simutech/Cadence agreement.

When Simutech began experiencing financial problems in 2001, it approached one of its

original investors, Kirnaf Ltd., seeking a bridge loan.  Kirnaf provided bridge financing secured

by all of Simutech's assets.  In the fall of 2001, Simutech defaulted on its repayment obligations,

and Kirnaf foreclosed on its lien.  Kirnaf purchased all of Simutech's assets at public auction in

September 2001.  On November 13, 2001, Kirnaf contributed the Simutech assets and $750,000

to form a new company, RaveSim, Inc. ("RaveSim").

**II.     Morris' 2001 Action Against RaveSim and Resulting Settlement Agreement**

On November 26, 2001, Morris brought a state-court action against RaveSim

---

[1] Except where otherwise indicated, the following recitation constitutes the court's
construal of the evidentiary record in light of the legal standard governing motions for summary
judgment under Federal Civil Procedure Rule 56.  This construal is offered in connection with
the motions now before the court only.

(subsequently adding Kirnaf and Saud ben Khudair as additional defendants), alleging that the transfer of Simutech's assets to Kirnaf and RaveSim had been fraudulently obtained. Although he had other legal representation at the time he initiated the action, beginning in April 2002 Morris was represented by the Grenley Rotenberg defendants. The parties to Morris' state-court action went to mediation on November 13, 2002. According to Morris' testimony, Morris repeatedly instructed Grenley both prior to and at the mediation to ensure that any agreement to settle the parties' dispute would provide for perfected assignment of RaveSim's claims against Cadence to Morris in the event RaveSim declined to pursue them. The parties reached an agreement, and a Settlement Agreement and Release (the "Settlement Agreement") was drafted and signed at the mediation.

The critical term of the Settlement Agreement obliged Morris to dismiss his claims against RaveSim, Kirnaf, and Khudair. In consideration for Morris' agreement to dismiss his claims, RaveSim agreed "to assess and review whether or not a viable claim exist[ed] against [Cadence]." RaveSim and Kirnaf further agreed "to review and assess information provided by Morris regarding a claim against Cadence and to render an opinion regarding whether or not a viable claim against Cadence exists based upon the information provided to RaveSim/Kirnaf by Morris." The Settlement Agreement required Morris to produce all documents in his possession relating to a potential claim against Cadence within 30 days of the effective date of the Settlement Agreement, and gave RaveSim and Kirnaf 60 days thereafter in which to "make a determination on whether it intend[ed] to pursue a claim against Cadence. . . ."

In the event RaveSim and Kirnaf decided to pursue a claim against Cadence, RaveSim and Kirnaf agreed to remit fifteen percent of any recovery (excluding the amount of RaveSim's

attorney fees) against Cadence to Morris.  If, however, RaveSim "determine[d] that the

information provided by Morris [wa]s insufficient for RaveSim to pursue a claim against

Cadence," RaveSim was obliged to provide all such information "to an independent, neutral

third-party mutually selected by the Settling Parties and located in Portland, Oregon, to provide

an independent assessment of the claim against Cadence."  The Settlement Agreement expressly

provided that the "assessment of the claim by such neutral third-party [*sic*] w[ould] be made

within 30 days of RaveSim's decision not to pursue a claim against Cadence."

 In the event "the independent third party assesse[d] the information provided by Morris

and determine[d] that a viable claim exist[ed] against Cadence," and yet RaveSim adhered to its

initial decision not to pursue the claim, the Settlement Agreement obliged RaveSim to "assign its

right to pursue such . . . claim against Cadence to Morris. . . ."  In the event Morris elected to

pursue such assigned claim, Morris agreed to remit fifteen percent of any recovery (excluding the

amount of his attorney fees) against Cadence to RaveSim.  In addition, Morris agreed to

indemnify RaveSim in connection with any such assignment.

 In the action now before this court, Morris alleges the Grenley Rotenberg defendants'

negligence in connection with drafting the Settlement Agreement, but not otherwise in

connection with his 2001 action against RaveSim, Kirnaf, and Khudair.

**III.**   **RaveSim Does Not Assign its Claims against Cadence, If Any, to Morris**

 Following the settlement of Morris' 2001 action against RaveSim, Kirnaf, and Khudair,

Morris provided information in his possession relating to the viability of potential claims against

Cadence to RaveSim and Kirnaf, as provided in the Settlement Agreement.  Approximately

seven months later, in July 2003, counsel for RaveSim advised Morris that it had elected not to

Page 5 - OPINION AND ORDER

file any action against Cadence on the basis of the information provided by Morris.  RaveSim

asked that, in the event Morris desired to bring an action against Cadence, Morris contact

RaveSim through his attorney "regarding assignment, indemnity in favor of RaveSim and Kirnaf,

and other related issues."

Approximately six months later, in or around January 2004, Morris for the first time

responded to RaveSim's advice of July 2003, through counsel (Neil Nathanson, an attorney who

is not a party to this action), with a demand that RaveSim assign its claims against Cadence to

Morris.  RaveSim responded by taking the position that it was not obligated to assign its potential

claims against Cadence under the Settlement Agreement, on the grounds that submission of

Morris' materials to an independent, neutral third-party evaluator, the evaluator's determination

that a viable claim against Cadence existed, and RaveSim's subsequent decision not to pursue

such viable claim were mandatory conditions precedent to RaveSim's assignment obligation.

Morris argued that, by not unilaterally selecting an independent evaluator and obtaining an

independent assessment of the potential claims, RaveSim had waived any such purported

conditions precedent, and forwarded a draft assignment of claims to RaveSim for its signature.

The draft did not provide for any indemnification of RaveSim in connection with the assignment.

Subsequently, in February 2004, RaveSim's counsel once again advised Morris of its

position that, under the Settlement Agreement, Morris was not entitled to transfer of RaveSim's

potential claims against Cadence absent an independent assessment of the claims as viable.

RaveSim reiterated that it did not intend to file any action against Cadence, and moreover

indicated that it would not change its position on that issue regardless of the outcome of the

independent evaluation, if any ever took place, but nevertheless expressly advised Morris that it

was "not willing to assign worthless claims to Morris." Thus, RaveSim appeared to adhere to the position that, under the Settlement Agreement, RaveSim was not obligated to assign its potential claims against Cadence absent strict compliance with the procedures set forth therein.

Notwithstanding the foregoing, RaveSim did not unambiguously refuse to execute Morris' draft assignment of claims. Instead, RaveSim indicated that it "would cooperate fully . . . to attempt to resolve th[e] matter as quickly as possible" but was unwilling to execute the draft assignment agreement as prepared by Morris in the absence of any provision providing for RaveSim's indemnity, as required under the Settlement Agreement.

Morris did not respond to RaveSim's correspondence of February 2004.

## IV.   Morris' 2004 Action Against Cadence

On June 17, 2004, Morris sued Cadence in the District of Oregon for breach of contract, breach of the implied covenant of good faith and fair dealing, and misappropriation of trade secrets. Morris was represented in that action by Zusman and the Sussman Shank defendants. According to Morris' declaration, prior to filing against Cadence, Zusman advised him that, under the Settlement Agreement, RaveSim's decision not to sue Cadence resulted in automatic assignment to Morris of RaveSim's potential claims against Cadence. Morris brought his action against Cadence in his own name, and without first consulting with or notifying RaveSim.

In November 2004, Judge Aiken found that there were grounds for dismissing Morris' claims against Cadence for lack of standing, but nevertheless gave Morris leave to amend his pleading to more adequately allege his standing to sue. Morris amended his pleading accordingly, and Judge Aiken found that Morris' amended allegations of standing were sufficient to permit his claims to survive a motion to dismiss under Federal Civil Procedure Rule 12(b)(6).

Judge Aiken stayed discovery on the merits of Morris' claims, and permitted the parties to

conduct discovery only in connection with the standing issue. After the parties completed

discovery in connection with Morris' standing, in approximately March 2006, Cadence moved for

summary judgment on the grounds that Morris lacked standing to bring action against it.

In April 2006 Morris participated in an exchange of emails with Zusman, Cook, and

Brecht in which they discussed the utility of obtaining testimony from Grenley to support their

opposition to Cadence's summary judgment motion. In the course of that exchange, Morris

characterized Grenley as a "liar," with reference (in Morris' words) to "the many conversations

[he] ha[d] had with G[renley] over the last three or so years about the perceived 'problems' with

the settlement agreement [of November 2002]." Zusman counseled Morris not to confront

Grenley on this issue because they might want to obtain an affidavit from him. Morris responded

with the words, "Okay, I won't call him. He is clearly a scared puppy. Good. Let him sweat."

In deposition, Morris was later asked to explain his choice of words in his April 2006

email message to his counsel, and engaged in a colloquy as follows:

> Q.    Why did you believe in April of '06 that Gary Grenley was a scared
>       puppy?
>
> A.    Well, it was pretty clear to me that he was trying to establish a defense
>       against a malpractice claim.
>
> Q.    A malpractice claim from you?
>
> A.    Yes.
>
> Q.    At this point in time you are basically, as you say here, you are frustrated
>       with Mr. Grenley?
>
> A.    Yes. Greatly so.

\* \* \*

> Q.    You are fighting a fight that you felt you didn't have to fight; is that correct?

> A.    That's correct.

Notwithstanding the foregoing, Morris subsequently declared that in April 2006 he did not know that a malpractice claim would lie against Grenley, but rather knew only that Grenley was worried about the possibility that such a claim might lie against him.

On June 6, 2006, Judge Aiken granted summary judgment in Cadence's favor on the standing issue, dismissing Morris' action. Judge Aiken specifically found that, under the Settlement Agreement:

> RaveSim would be obligated to assign a claim to plaintiff against Cadence if the following events took place: (1) plaintiff provided information on the claims he believed existed against Cadence to RaveSim; (2) RaveSim determined that it would not pursue a claim against Cadence; (3) the parties obtained an independent assessment from a neutral third party determining that a valid claim existed; and (4) RaveSim nevertheless, declined to bring suit against Cadence.

*Morris v. Cadence Design Sys.*, Case No. 04-877-AA, 2006 U.S. Dist. LEXIS 37031, *10 (D. Or. June 6, 2006). Characterizing the four enumerated conditions as conditions precedent to RaveSim's assignment obligation, Judge Aiken specifically found that the parties had offered no evidence to show that the third and fourth conditions precedent -- that the parties obtain the opinion of an independent, neutral third party that the potential claim or claims against Cadence were "viable" and that RaveSim nevertheless decline to pursue the claim in its own behalf -- had ever been satisfied. *See id.* at *11. On that basis, Judge Aiken concluded that RaveSim had never purported to assign to Morris its claim or claims, if any, against Cadence. *See id.* Moreover, Judge Aiken found that the evidence established that RaveSim had not otherwise

Page 9 - OPINION AND ORDER

assigned its claims against Cadence to Morris. *See id.*; *see also id.* at 16-17.

Judge Aiken further found that in August 2004 – two months after Morris filed his action against Cadence (and apparently in correspondence that has not been offered into evidence in this action) – Morris' counsel (apparently either Zusman or one of the Sussman Shank defendants) wrote to RaveSim's counsel to advise RaveSim of Morris' action against Cadence and to reiterate Morris' request for assignment of RaveSim's claims against Cadence. *See id.* at 14. According to Judge Aiken's findings, RaveSim responded by reiterating its position that "prior to [RaveSim] executing any assignment of claims, the terms of the Settlement Agreement required that Morris execute indemnity and security agreements in favor of RaveSim and Kirnaf" and that absent such indemnity, it remained unwilling to effect the assignment. *See id.* at 14-15.

Judge Aiken also briefly discussed Morris' argument that any such assignment, had one occurred, would have been enforceable despite the lack of Cadence's express consent in light of a provision of the Simutech/Cadence agreement purporting to bar certain assignments of rights under the agreement absent the consent of the parties thereto. Judge Aiken stated that, had an assignment to Morris been made, it would not have been made in connection with the transfer of all or a substantial portion of Simutech's assets (since no such transfer of assets to Morris had occurred), and that therefore the assignment would not have fallen within an exception to the Simutech/Cadence agreement's prohibition against certain transfers. However, in light of Judge Aiken's finding that no assignment had been made, and that therefore Morris lacked standing to sue Cadence, Judge Aiken lacked jurisdiction to consider the merits of Morris' claims against Cadence, so that her discussion of Morris' counterfactual argument was necessarily made in *dicta*.

Page 10 - OPINION AND ORDER

Judge Aiken did not expressly specify whether her dismissal of Morris' claims against Cadence was with or without prejudice. The Ninth Circuit affirmed Judge Aiken's disposition in August, 2008.

In the action now before this court, Morris alleges Zusman's and the Sussman Shank defendants' negligence in prosecuting his 2004 action against Cadence.

V.    **Morris' 2007 Action Against RaveSim**

In February 2007, through his counsel defendant Brecht, Morris requested that RaveSim obtain an independent, neutral third party's assessment of RaveSim's potential claims against Cadence. RaveSim declined to do so, asserting that Morris' request was untimely under the terms of the Settlement Agreement.

On August 15, 2007, Morris (represented by the Sussman Shank defendants and by his current counsel Christopher LaVoy) brought an action in this court against RaveSim, seeking declaratory judgment that RaveSim, by its conduct, had effected assignment of its potential claims against Cadence to Morris, and alternatively seeking specific performance of RaveSim's purported contractual obligation under the Settlement Agreement to effect assignment to Morris of its claims against Cadence. In March 2008, I recommended that the court deny cross-motions for summary judgment in Morris' 2007 action, on the grounds that the Settlement Agreement was ambiguous as a matter of law. Judge Mosman adopted my recommendations as his own opinion on June 25, 2008. On July 2, 2008, Morris moved to terminate his representation by the Sussman Shank defendants and to substitute for them his current counsel, Judy Snyder. I granted Morris' motion for substitution of counsel on July 7, 2008.

Morris and RaveSim settled their dispute in January 2009. According to the terms of the

Page 11 - OPINION AND ORDER

parties' settlement, RaveSim agreed to assign its claims against Cadence to Morris in exchange for Morris' covenant not to sue Cadence on the assigned claims, his agreement to indemnify RaveSim for some of its incurred costs, and his waiver of all claims against RaveSim.

## VI.    Tolling Agreement Between Morris and the Grenley Rotenberg Defendants

On June 5, 2008, Morris and the Grenley Rotenberg defendants entered into a one-year tolling agreement of the statute of limitations applicable to any legal malpractice claim Morris might have against those defendants arising out of their representation of him in connection with his 2001 action against RaveSim and the Settlement Agreement of November 13, 2002. The Grenley Rotenberg defendants nevertheless take the position that the two-year statute of limitations applicable to such actions began to run by not later than April 2006, so that Morris' claims against them in this action were already time-barred before the tolling agreement was executed.

## ANALYSIS

Where, as here, a federal district court's subject-matter jurisdiction is based on the diversity of the parties and the amount in controversy, the district court will apply federal procedural law and the substantive law of the state in which the court is located. *See Zamani v. Carnes*, 491 F.3d 990, 995 (9th Cir. 2007); *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). I thus apply Oregon substantive law and federal procedural law in considering the dispositive motions now before the court.

Under Oregon law, a legal malpractice plaintiff is generally required to "allege and prove (1) a *duty* that runs from the defendant to the plaintiff; (2) a *breach* of that duty; (3) a resulting *harm* to the plaintiff measurable in damages; and (4) *causation, i.e.*, a causal link between the

breach of duty and the harm." *Stevens v. Bispham*, 316 Or. 221, 227 (1993) (emphasis original), *citing Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 14-15 (1987).  Here, it is Morris' position that the Grenley Rotenberg defendants breached the duty of care that they owed to him as his legal representatives when they negligently negotiated and drafted the November 2002 Settlement Agreement (by which Morris' 2001 action against RaveSim, Kirnaf, and Khudair was resolved) in such a way that (i) the Settlement Agreement failed to provide for automatic assignment of RaveSim's potential claims against Cadence to Morris in the event RaveSim declined to pursue those claims, and (ii) the Settlement Agreement could colorably be interpreted as conditioning RaveSim's obligation to assign its potential claims against Cadence to Morris on an independent, neutral third party's evaluation of those claims as "viable."  Morris alleges Grenley's direct liability for such negligence and Grenley Rotenberg's vicarious liability therefor under the doctrine of *respondeat superior*.  Morris asserts that the Grenley Rotenberg defendants' negligence caused him to incur attorney fees he should not otherwise have needed to incur in connection with his 2007 action against RaveSim and caused his failure to recover damages in his 2004 action against Cadence.

It is Morris' further position that Zusman and the Sussman Shank defendants breached the duty of care that they owed to him as his legal representatives in connection with his 2004 action against Cadence by (i) failing to recognize that the assignment provisions of the Settlement Agreement created only a conditional promise to assign rather than a perfected assignment, (ii) failing to join RaveSim as a party to the 2004 action against Cadence, (iii) failing to advise Morris of his need to satisfy conditions precedent before obtaining assignment of RaveSim's claims against Cadence, and (iv) failing to recognize or argue in the 2004 action

Page 13 - OPINION AND ORDER

against Cadence that the provision of the Simutech/Cadence agreement barring certain

assignments absent Cadence's consent was unenforceable as a matter of applicable California

law. Morris alleges Zusman's, Cook's, and Brecht's direct liability for such negligence and

Sussman Shank's vicarious liability therefor under the doctrine of *respondeat superior*. Morris

asserts that Zusman's and the Sussman Shank defendants' negligence caused him to incur

attorney fees he should not otherwise have needed to incur in connection with his 2004 action

against Cadence and caused his failure to recover damages in that same action.

All defendants move for summary judgment as to Morris' claims of professional

negligence against them.

**I.      Morris' Claim Against the Grenley Rotenberg Defendants**

As noted above, Morris alleges the Grenley Rotenberg defendants liability for negligence

in connection with Grenley's provision of legal services in negotiating and drafting the November

2002 Settlement Agreement only. The Grenley Rotenberg defendants' primary argument in

support of their summary judgment motion is that Morris' claim against them is time-barred. I

note, preliminarily, that statutes of limitations are treated as substantive for purposes of

determining choice of law. *See, e.g., Walker v. Armco Steel Corp.*, 446 U.S. 740, 751 (1980). In

consequence, Oregon law governs the timeliness of Morris' claim against the Grenley Rotenberg

defendants.

The statute of limitations applicable to legal malpractice claims is provided at Or. Rev.

Stat. 12.110. Section 110 provides for a two-year limitations period applicable to such claims.

*See* Or. Rev. Stat. 12.110(1). The "discovery" rule for establishing when a claim accrues is

applicable to legal malpractice claims. "Thus, the claim accrues and the statute of limitations

Page 14 - OPINION AND ORDER

begins to run when the client both suffers damage and knows or, in the exercise of reasonable care, should know that the substantial damage actually suffered was caused by the lawyer's acts or omissions." *Stevens*, 316 Or. at 227 (citations and internal quotation marks omitted).

In *United States Nat'l Bank v. Davies*, 274 Or. 663 (1976), a legal malpractice action brought by a plaintiff on behalf of a decedent whose damages included attorney fees necessitated to defend an action that would not have been brought successfully against him but for the defendant attorneys' negligence, the Oregon Supreme Court analyzed the question of when a cause of action for professional negligence accrues as follows:

> There is no doubt that decedent's necessity to defend the action caused him damage more than two years prior to the commencement of the present [legal malpractice] action. It is not so clear, however, that at that time it could yet be determined that his expense of defense *was caused by* negligent advice by defendants. In many situations the closeness of the legal questions involved would make it impossible to ascertain until the ultimate determination of the case whether it was brought as the result of the attorney's bad advice or whether it was the result of a misapprehension on the part of the party who sued as to his legal rights. In the present instance, if decedent had won the case brought against him, he would not normally be in a position to claim that negligent advice on the part of the present defendants was a cause of his expense of defense.

*Davies*, 274 Or. at 668-669 (emphasis original). The court reasoned further:

> Plaintiff's decedent could have played it safe by filing an action against defendants immediately upon his being sued, in the event it subsequently appeared defendants' negligent advice was the cause of the action brought against him. However, it does not seem wise to encourage the filing of such provisional actions. More important, it could prove to be disastrous to a plaintiff's defense of the action brought against him and, thus, perhaps disastrous to his former legal advisor as well. In the present case, plaintiff's decedent would have been defending one suit or action, claiming he had acted in conformance with the law, while simultaneously maintaining an action against defendants, claiming that he had not acted in conformance with the law because of faulty advice from defendants. Such an inconsistent position would have given rise to impeachment of decedent in his defense of the action brought against him, which certainly is not desirable from either of the present parties' point of view.

*Id.* at 670. The court ultimately decided that, under the circumstances, the decedent's cause of action did not accrue until resolution of the claim against him, notwithstanding that he had suffered damage as a result of the defendants' negligence prior to that time. *See id.*

In *Jaquith v. Ferris*, 297 Or. 783 (1984), a negligence plaintiff asserted as damages the attorney fees she had incurred as a result of her realtor's alleged negligence. The plaintiff argued that the statute of limitations should not begin to run until resolution of the case in which those fees were incurred, because she could not determine the *extent* of her damages until the case was resolved, although she knew that some such fees had already been incurred in consequence of the realtor's actions. The *Jaquith* court rejected the plaintiff's argument, holding that it was "immaterial that the extent of damages could not be determined at the time of the [tort] for purposes of determining when the statute of limitation commenced to run." *Jaquith*, 297 Or. at 788. The court held that, under the circumstances, the limitations period began to run as soon as the plaintiff knew of the negligence and of some of the resulting harm, including the plaintiff's initial legal costs. *See id.*

In *Magnuson v. Lake*, 78 Or. App. 620 (1986), a legal malpractice action brought by plaintiffs who had relied on the services of an attorney to draft a provision of a land-sale agreement, the Oregon Court of Appeals considered circumstances in which the defendant attorney had negligently performed his services to the plaintiffs, and, more than two years later, the purchasers of the properties brought a declaratory judgment action against the plaintiffs to determine their rights under the ambiguously worded provision. Approximately six months after the action was brought, plaintiffs sought advice from another attorney who advised them that he believed the first attorney's work had been inadequate. Over two years after the action was first

Page 16 - OPINION AND ORDER

filed, it was resolved against the plaintiffs' interests. Less that two years after resolution of the action, the plaintiffs initiated their legal malpractice action. The court of appeals held that, "[b]ecause plaintiffs concede that they knew of defendant's negligence more than two years before they commenced this action, but contend that they were not harmed until the former action was resolved, this case is closer to *Jaquith* than it is to . . . *Davies*." *Magnuson*, 78 Or. App. at 625. The court held that the plaintiffs suffered damages at the time they were forced to incur costs to defend the action against them, and that they knew their damages had been caused by the defendant's negligence when they received the second attorney's opinion. *See id.* On that basis, the court ruled plaintiffs' action was time-barred. *See id.*

In *Bollam v. Fireman's Fund Ins. Co.*, 302 Or. 343 (1986), a negligence action outside the professional liability context in which the plaintiff asserted incurred attorney fees as damages, the Oregon Supreme Court discussed its prior decisions in *Davies* and *Jaquith* in detail. The *Bollam* plaintiffs were involved in an automobile accident in which a third party suffered injuries. Approximately one week later, the *Bollam* defendant (the plaintiffs' insurer) began making weekly "advance payments" to the third party to compensate him for his injuries. Approximately 18 months later, at a time when the defendant had paid approximately $50,000 in advance payments to the third party, the defendant advised the plaintiffs to retain their own attorney to evaluate the third party's potential claim against them. The plaintiffs complied with their insurer's advice, thereby incurring attorney fees. Approximately one year later, the third party filed an action against the plaintiffs. The third party's action against the plaintiffs was resolved by settlement approximately two years after it had been filed, with the plaintiffs making a payment to the third party over and above the payments tendered by their insurer in the amount

of their policy limits.  Nearly one year after the third party's action was settled, the plaintiffs

brought suit against their insurer, asserting that their liability to the third party over and above the

policy limit payments tendered by the insurer had been caused by the insurer's negligence in

making advance payments to the third party.  In order to determine whether plaintiffs' action was

time-barred by the applicable two-year statute of limitations, the *Bollam* court was required to

determine when the plaintiffs' cause of action against their insurer accrued.  The court noted,

preliminarily, that the insurer's alleged negligence – making advance payments to the third party

– had already occurred by the time the plaintiffs first consulted an attorney, approximately four

years prior to the date the plaintiffs filed their action.  The court further noted that "[a] cause of

action for that negligence could not arise, however, until it caused harm and resulting damages to

plaintiffs."  *Bollam*, 302 Or. at 347.

    The *Bollam* court observed that the majority of the court of appeals below had elected to

apply the reasoning of the *Davies* court in determining the timeliness of the plaintiffs' claim.

That is, the court of appeals majority held that plaintiffs could not have known that they would

actually be exposed to excess liability on the third party's claim against them until that claim was

finally resolved, and that the plaintiffs' "incurrence of attorney fees to guard against the

possibility of future harm" approximately one year before the third party filed his action "d[id]

not constitute damage sufficient to start the running of the [applicable limitations] period."  *Id.* at

349.  The court of appeals majority reasoned that "[t]o hold otherwise would result in an

anomolous [*sic*] situation in which plaintiffs would have been required to have initiated an action

in anticipation of a loss that might never have materialized.  Such provisional actions were

expressly disapproved in. . .*Davies*. . . ."  *Id.*  By contrast, the court of appeals dissent opined

Page 18 - OPINION AND ORDER

that:

> This case falls squarely within *Jaquith* . . . . It is distinguishable from . . .
> *Davies*. . . for the same reason that *Jaquith* was. In *Davies*, the controlling issue
> was when did the plaintiff become aware, or should have become aware, of the
> *cause* . . . of his damage, not when the harm *occurred*. Because the cause of his
> damage, if any, could not have been determined until the prior action was
> terminated, the court held that the Statute of Limitations did not commence to run
> until that determination had been made. Here, as in *Jaquith*, the resolution of the
> prior action was determinative of the extent of the damages, not the cause.

*Id.* (emphasis original; internal modifications omitted).

On further review, the Oregon Supreme Court agreed with the dissenting opinion below.

The court characterized *Davies* effectively as standing for the proposition that a cause of action

for professional negligence cannot accrue until it has been established that the plaintiff's harm

was caused by the defendant's negligence, and for the finding that it was impossible to determine

on the facts presented in that case whether the defendant's advice to the plaintiff's decedent had

been negligent until after the underlying case had been resolved. By contrast, the court

characterized *Jaquith* as standing for the proposition that indeterminacy of the extent of damages

does not prevent a cause of action from accruing, where all other elements of the cause of action

have been satisfied. The *Bollam* court found that resolution of the third party's action against the

plaintiffs had not resolved any issue related to plaintiffs' insurer's negligence other than the extent

of damages. Further finding that the plaintiffs' incurrence of attorney fees to evaluate the third

party's claim were cognizable damages, the court held that the plaintiffs' cause of action against

their insurer had accrued at the time those attorney fees were incurred, and that, in consequence,

the plaintiffs' claims were time-barred. *See id.* at 352-353.

Here, the Grenley Rotenberg defendants take the position that, in accord with the

reasoning of *Jaquith*, *Magnuson*, and *Bollam*, Morris' cause of action against them should be

deemed to have accrued as of the date Morris first knew (or in the exercise of reasonable care

should have known) of a substantial likelihood that he had been harmed by the manner in which

the November 2002 Settlement Agreement had been drafted. The Grenley Rotenberg defendants

argue that a reasonable person would have been on inquiry notice of the possibility of harm in

February 2004 (when Morris first received written notice of RaveSim's position that the

Settlement Agreement contained only a conditional promise to assign rather than a perfected

assignment, and that it provided for four conditions precedent on that promise), in August 2004

(when Cadence moved to dismiss Morris' claims against it for lack of standing), in November

2004 (when Judge Aiken found Cadence's motion to dismiss for lack of standing well taken), and

in March 2006 (when Cadence moved for summary judgment on the issue of Morris' standing to

bring action against it), but certainly not later than April 2006, when Morris opined that Grenley

was a "scared puppy" because it was at that time "pretty clear to [him] that [Grenley] was trying

to establish a defense against a malpractice claim." The Grenley Rotenberg defendants argue that

Morris' belief that Grenley was concerned about possible malpractice in connection with drafting

the November 2002 Settlement Agreement, taken together with his knowledge that there was an

open, contested question regarding whether the Settlement Agreement conferred standing on him

to prosecute his action against Cadence and that he was incurring fees in connection with that

action, is sufficient to establish that Morris had an accrued cause of action against them by not

later than April 2006.

    I find the Grenley Rotenberg defendants' position unpersuasive. As in *Davies*, Morris

could not have known whether his counsel had been negligent in their provision of legal services

Page 20 - OPINION AND ORDER

until a court finally resolved the issue in the underlying action. That is, the issue requiring

resolution in the underlying action was not, as it was in *Jaquith*, *Magnuson*, and *Bollam*, the

extent of the damages caused by counsel's alleged negligence, but rather whether Grenley had in

fact drafted the Settlement Agreement in such a manner that Morris lacked standing to bring an

action against Cadence. At the time he filed and prosecuted his 2004 action against Cadence,

Morris was represented by counsel who, according to Morris' declaration, had advised him that

he had standing to sue Cadence under the Settlement Agreement, and, moreover, in November

2004 Judge Aiken determined that Morris' amended allegations regarding standing were

sufficient to permit his action to survive a motion to dismiss. Under these circumstances, I

cannot reasonably conclude that, as a matter of law, Morris should have known that the

Settlement Agreement had, in fact, been negligently drafted at any time prior to June 6, 2006 (the

date Judge Aiken finally resolved the standing issue).

 The fact that in April 2006 Morris had reason to believe that Grenley was concerned

about a possible malpractice claim arising out of the negotiation and drafting of the Settlement

Agreement does not impact the foregoing analysis. In *Davies*, the plaintiff's decedent was aware

prior to resolution of the underlying legal action that a lawsuit had been filed, the outcome of

which would determine whether his counsel had committed legal malpractice, and that his

opposing party was affirmatively advocating a position which, if vindicated, would establish his

counsel's prior negligence. Nevertheless, the Oregon Supreme Court concluded as a matter of

law that, under the circumstances, the decedent's cause of action against his counsel could not

have accrued prior to judicial determination that his counsel's advice had been unsound when

offered. Morris, likewise, was aware of the theoretical possibility that a malpractice claim might

Page 21 - OPINION AND ORDER

lie against the Grenley Rotenberg defendants, but until Judge Aiken issued a final adverse

determination on the standing issue, his cause of action for malpractice could not have accrued.

Moreover, the Oregon Supreme Court's post-*Davies* jurisprudence provides no indication

that the state's highest court would decide *Davies* any differently were it to arise today. To the

contrary, the *Jaquith* and *Bollam* courts expressly affirmed (but distinguished) the *Davies* court's

reasoning, strongly suggesting that *Davies* remains good law in Oregon.

Because Morris' cause of action against the Grenley Rotenberg defendants did not accrue

until June 6, 2006, and because Morris entered into a one-year tolling agreement with the

Grenley Rotenberg defendants on June 5, 2008, the day before the applicable two-year

limitations period would otherwise have run, Morris' action was timely filed against the Grenley

Rotenberg defendants on June 4, 2009. The Grenley Rotenberg defendants are therefore not

entitled to summary judgment as to Morris' claim against them on the proffered grounds that

Morris' claim was time-barred when filed.

The Grenley Rotenberg defendants further argue that they are entitled to summary

judgment as to Morris' claim against them on the grounds that Morris will be unable to present

evidence to show that Grenley acted other than in accord with Morris' instructions in drafting the

Settlement Agreement. The Grenley Rotenberg defendants argue that Morris' instructions to

Grenley, if any, could only have been delivered during the course of the mediation at which the

Settlement Agreement was negotiated, and would therefore be confidential under Or. Rev. Stat.

36.220. However, the Grenley Rotenberg defendants also assert that Morris has testified in

deposition that he gave Grenley *no* instructions in drafting the Settlement Agreement, other than

to ensure that the agreement provide for assignment to him of the right to sue Cadence in his own

Page 22 - OPINION AND ORDER

name. The Grenley Rotenberg defendants argue on this basis that, because Morris did not

instruct Grenley *not* to include a provision calling for an independent evaluator's assessment of

the claims, the inclusion of such a provision cannot have been negligent.

Again, I find the Grenley Rotenberg defendants' arguments unpersuasive. Morris does

not purport to rely on any communications made in the course of mediation proceedings in

support of his claim that the Settlement Agreement was drafted negligently, nor does the absence

of any affirmative instruction to refrain from conditioning RaveSim's assignment obligation on

an independent, neutral third party's assessment of the claims to be assigned establish that

Grenley breached no duty of care owed to Morris in connection with drafting the agreement. To

the contrary, Morris has testified that he repeatedly instructed Grenley *prior* to the mediation

proceedings to ensure that any resolution of the 2001 action against RaveSim would provide for

perfected assignment to him of RaveSim's claims against Cadence. Morris is entitled to ask a

jury to determine whether the Settlement Agreement – the terms and provisions of which are in

the evidentiary record – was drafted negligently, to his detriment. In consequence, the Grenley

Rotenberg defendants are not entitled to summary judgment as to Morris' claim against them on

the proffered grounds that the evidentiary record necessarily forecloses the possibility that a

finder of fact could find that Grenley drafted the Settlement Agreement negligently.

For the foregoing reasons, the Grenley Rotenberg defendants' motion for summary

judgment is denied.

## II.    Morris' Claim Against Zusman and the Sussman Shank Defendants

As noted above, Morris alleges Zusman's and the Sussman Shank defendants' liability for

negligence arising out of Zusman's, Cook's and Brecht's provision of legal services in connection

with Morris' 2004 action against Cadence only.  Specifically, Morris argues that Zusman and the

Sussman Shank defendants (collectively, the "Cadence-action defendants") breached  the duty of

care that they owed him as his legal representatives in connection with his 2004 action against

Cadence by (i) failing to recognize that the assignment provisions of the Settlement Agreement

created only a conditional promise to assign rather than a perfected assignment, (ii) failing to join

RaveSim as a party to Morris' 2004 action against Cadence, (iii) failing to advise Morris of his

need to satisfy conditions precedent before obtaining assignment of RaveSim's claims against

Cadence, and (iv) failing to argue in Morris' 2004 action against Cadence that the provision of

the Simutech/Cadence agreement barring certain assignments absent Cadence's consent was

unenforceable as a matter of applicable California law.  The Cadence-action defendants argue

that they are entitled to summary judgment on Morris' claim against them on the grounds that, as

a matter of law, Morris can establish neither that they breached their duty of care to him nor that

their breach, had any such breach occurred, could have caused Morris' damages.

Specifically, the Cadence-action defendants argue that any breach of their duty of care to

Morris in connection with Morris' 2004 action against Cadence (if any such breach occurred,

which the Cadence-action defendants dispute) cannot have been actionable as negligence,

because the unfavorable outcome of the action was the inevitable result of Morris' lack of

standing, which in turn had been caused by the manner in which the November 2002 Settlement

Agreement was drafted rather than by any action taken by any Cadence-action defendant.  The

Cadence-action defendants note that the Settlement Agreement contained no provision effecting

assignment to Morris of RaveSim's potential claims against Cadence, but rather contained only a

conditional promise to assign the claims.  Moreover, it is undisputed that, prior to the settlement

of Morris' 2007 action against RaveSim, RaveSim never purported actually to effect assignment

of its claims against Cadence to Morris; indeed, all parties now agree that, prior to the settlement

of Morris' 2007 action against RaveSim, Morris never actually possessed standing to sue

Cadence.  In consequence, the Cadence-action defendants argue, the unfavorable outcome of the

action was "foreordained" such that "nothing that [the Cadence-action] defendants did or could

have done [c]ould have changed" the result.  On that basis, the Cadence-action defendants argue

that as a matter of law  Morris cannot establish that the harms he suffered were caused by their

actions or inactions.

Oregon law provides that, "when an attorney's negligence occurs in the conduct of

litigation, the plaintiff must prove that the attorney's negligence caused a less favorable outcome

in the underlying case, *i.e.*, the 'case within the case.'"  *Varner v. Eves*, 164 Or. App. 66, 73

(1999), *citing Chocktoot v. Smith*, 280 Or. 567, 570 (1977) ("When an attorney's negligence

occurred in the conduct of litigation, a jury cannot award damages for plaintiff's loss unless it

concludes that the negligence led to an unfavorable or less favorable outcome for plaintiff");

*Harding v. Bell*, 265 Or. 202, 205 (1973) (affirming that a legal malpractice claimant has "lost

nothing" by the conduct of the claimant's attorneys, even if the attorneys are "guilty of gross

negligence," unless the claimant had a "good cause of action" in the underlying case).  The

Cadence-action defendants effectively argue, then, that their negligence, if any, could not

possibly have caused a less favorable outcome in the underlying case, because Morris' claims

against Cadence would have been dismissed for lack of standing no matter how diligently his

counsel performed.

This argument necessarily fails as to Morris' allegations that Zusman, Cook and Brecht

Page 25 - OPINION AND ORDER

were negligent, not "in the conduct of litigation," but rather in providing Morris with counsel *prior* to filing the Cadence action. A trier of fact could reasonably conclude that, as Morris alleges, Morris' attorneys were negligent in failing to recognize that the Settlement Agreement contained no perfected assignment of RaveSim's claims to Morris and/or in failing to advise Morris of his need to satisfy conditions precedent before obtaining assignment of RaveSim's claims against Cadence, and could further reasonably conclude that, but for such negligence, Morris would not have filed the 2004 action against Cadence without first obtaining standing to bring it, and therefore would not have incurred attorney fees in connection with the futile prosecution of that action. Those unnecessarily incurred attorney fees would properly be cognizable as damages caused by the Cadence-action defendants' negligent provision of pre-litigation legal services. The Cadence-action defendants' motion for summary judgment is therefore denied as to Morris' claim against them to the extent premised on the Cadence-action defendants' alleged negligence in failing to recognize that the assignment provisions of the Settlement Agreement created only a conditional promise to assign rather than a perfected assignment and in failing to advise Morris of his need to satisfy conditions precedent before obtaining assignment of RaveSim's claims against Cadence – that is, Morris' allegations of pre-litigation negligence – but only insofar as Morris seeks, as damages caused by such negligence, the attorney fees he incurred in prosecuting his futile 2004 action against Cadence.

By contrast, the Cadence-action defendants' argument is well taken to the extent Morris seeks, as damages caused by the Cadence-action defendants' pre-litigation negligence, whatever moneys he would have recovered from Cadence had he prevailed in the 2004 action. The Cadence-action defendants' alleged pre-litigation negligence did not cause Morris' lack of

Page 26 - OPINION AND ORDER

standing, and his failure to obtain a recovery from Cadence is not attributable as a matter of law either to their failure to recognize Morris' lack of standing or to their failure to advise him of the need to satisfy conditions precedent before obtaining assignment of RaveSim's claims. The Cadence-action defendants' motion is therefore granted as to Morris' claim against them to the extent Morris seeks, as damages caused by the Cadence-action defendants' alleged pre-litigation negligence, the moneys he allegedly would have recovered from Cadence had he prevailed in the 2004 action.

The Cadence-action defendants' argument also fails, at least at this stage of these proceedings, as to Morris' allegations that Zusman, Cook and Brecht were negligent in the conduct of Morris' 2004 litigation against Cadence by failing to join RaveSim as a party to the action. It is Morris' position that, but for this negligent failure, he would have been successful within the context of that action in obtaining assignment of RaveSim's potential claims against Cadence. It is his further position that, had he been assigned RaveSim's potential claims against Cadence, he would have had standing to bring his claims against Cadence, and moreover would have prevailed on those claims and ultimately collected a money judgment from Cadence.

The Cadence-action defendants note, correctly, that Morris subsequently brought an action against RaveSim to obtain assignment of its potential claims against Cadence, and that while RaveSim did ultimately agree to resolve that action by assigning the claims to Morris, in consideration for its agreement to assign the claims RaveSim required, *inter alia*, that Morris covenant not to bring any action against Cadence on the claims. The Cadence-action defendants assert that there is no reason to believe that, had it been filed in June 2004, the outcome of an action against RaveSim to obtain assignment of the claims would have differed from the outcome

Page 27 - OPINION AND ORDER

actually achieved.  In response, Morris takes the position that circumstances materially changed between June 2004 and January 2009 such that it would be inappropriate to treat the 2007 action against RaveSim as indicative of how the "case within the case" would have played out absent his attorneys' alleged negligence.  Morris specifically argues that his willingness to covenant not to sue on the claims against Cadence in January 2009 was the result of three procedural impediments to bringing action against Cadence that were not present in June 2004:  first, he asserts that in 2006 Judge Aiken dismissed his 2004 claims against Cadence with prejudice, barring him from refiling his claims even if he subsequently cured his lack of standing; second, he asserts that his claims against Cadence, had he been permitted to file them in 2009, would have been subject to dismissal on grounds of issue preclusion; and, third, he asserts that his claims against Cadence became time-barred prior to settlement of the 2007 action against RaveSim.

As to Morris' assertion that Judge Aiken dismissed his claims against Cadence with prejudice, Morris is correct when he notes that Judge Aiken's opinion did not expressly specify whether her dismissal of his claims was with or without prejudice, and is additionally correct when he asserts that, as a general rule, under Federal Civil Procedure Rule 41(b) dismissal is presumed to be with prejudice unless the court's order otherwise specifies.  However, it is clear that Judge Aiken dismissed Morris' claims for lack of standing, and not for any other reason.  Lack of standing is a jurisdictional bar to the maintenance of an action, *see, e.g., Allen v. Wright*, 468 U.S. 737, 750-751 (1984), *Equity Lifestyle Props., Inc. v. County of San Luis Obispo*, 548 F.3d 1184, 1189, n. 10 (9th Cir. 2008), and dismissal on jurisdictional grounds is necessarily dismissal without prejudice, in that it precludes adjudication of the merits of the dismissed claim,

Page 28 - OPINION AND ORDER

*see, e.g.*, *Costello v. United States*, 365 U.S. 265, 284-288 (1961).  Moreover, Rule 41(b)

expressly states that dismissal is presumed to constitute adjudication on the merits, except where

dismissal is effected for lack of jurisdiction, improper venue, or failure to join a necessary party.

*See* Fed. R. Civ. P. 41(b).  Because Judge Aiken's dismissal was based on the jurisdictional

ground that Morris lacked standing, the Rule 41(b) presumption is inapplicable.

      As to Morris' assertion that his claims were nevertheless barred by issue preclusion –

specifically, that relitigation of the Cadence claims would have been barred by Judge Aiken's

discussion of the no-assignment provision of the Simutech/Cadence agreement and/or her

discussion of the conditions precedent to RaveSim's assignment obligation under the November

2002 Settlement Agreement – the jurisdictional nature of the standing requirement is again fatal

to Morris' asserted position.  Based on her findings that the Settlement Agreement did not

provide for perfected assignment of the Cadence claims and that RaveSim never otherwise

purported to effect assignment of the claims to Morris, Judge Aiken held that Morris lacked

standing to bring his action against Cadence.  Because that ruling was jurisdictional in nature,

Judge Aiken lacked jurisdiction to adjudicate the merits of Morris' claim.  Her discussion of the

no-assignment provision and/or of the conditions precedent provided for in the Settlement

Agreement was therefore necessarily dicta, without issue-preclusive consequences.

      However, as to Morris' assertion that his claims against Cadence became time-barred

prior to the January 2009 settlement of the 2007 action against RaveSim, unresolved questions of

fact preclude entry of summary judgment at this stage of these proceedings.  Preliminarily, the

evidentiary record before the court does not permit me to ascertain with precision when

Simutech's claims for breach of contract, breach of the implied covenant of good faith and fair

dealing, and misappropriation of trade secrets first accrued. The allegations of Morris' complaint suggest that the claims might have accrued in June 2001, when Cadence's subsidiary Quickturn Design Systems, Inc. ("Quickturn"), announced and displayed an integrated circuit prototyping system allegedly based closely on Simutech's RAVE system (and a Simutech employee identified Simutech technology as underlying Quickturn's product), in July 2001, when Quickturn returned its entire inventory of RAVE systems to Simutech, or in September 2001, when Simutech closed its doors, but those allegations do not constitute evidence.

Whenever Simutech's claims against Cadence first accrued, under Oregon law a six-year limitations period would have been applicable to the two contract-based claims, *see* Or. Rev. Stat. 12.080, and a three-year limitations period would have applied to the misappropriation claim, *see* Or. Rev. Stat. 646.471. On the *arguendo* assumption that Simutech's claims against Cadence first accrued in June 2001, then absent any form of tolling the misappropriation claim would have become time-barred in June 2004, and the contract claims in June 2007. I note that Oregon's equitable tolling statute, Or. Rev. Stat. 12.220, provides claimants with 180 days following involuntary dismissal of their claims (on grounds other than adjudication of the merits) within which to refile their claims, even if the claims became time-barred during the intervening period. *See* Or. Rev. Stat. 12.220. If the 180-day period could properly be construed as beginning to run in August 2008, when the Ninth Circuit affirmed Judge Aiken's dismissal of Morris' claims against Cadence, under the statute the claims would not have become time-barred until February 2009, and therefore no procedural impediment to suing on the claims would have existed in January 2009 when Morris settled the 2007 action against RaveSim. However, a 2010 opinion of the Oregon Court of Appeals, *Belinskey v. Clooten*, 237 Or. App. 106 (2010),

Page 30 - OPINION AND ORDER

persuasively reasoned that the 180-day period must necessarily run from the trial court's judgment dismissing the claims, regardless of whether the claimant appeals the dismissal, *see Belinsky*, 237 Or. App. at 109, 110-112, and I am aware of no grounds for concluding that Oregon's highest court would hold to the contrary.  Because Judge Aiken dismissed Morris' claims in June 2006, and assuming a June 2001 accrual date, the misappropriation claim would have become time-barred in December 2006 (180 days following its dismissal on standing grounds), and the contract claims in June 2007 (six years after they first accrued).  Both claims would therefore have been time-barred well before January 2009, when Morris covenanted not to sue on the assigned cadence claims.

The Cadence-action defendants argue that the court should not limit its analysis of the time-bar issue to Oregon law, but rather should expand its inquiry to include the possibility that Morris could have filed the assigned claims in California where, according to Morris' allegations, Quickturn had its principal place of business.  Assuming without deciding both that I may appropriately look outside this district to determine whether Morris might have filed the assigned claims in some other jurisdiction and that a California court could appropriately have exercised both personal and subject-matter jurisdiction over the claims had they been filed in California, I note that the contract claims would have been subject to a four-year limitations period in California, *see* Cal. Civ. Proc. § 337, and the misappropriation claim to a three-year limitations period, *see* Cal. Civ. Code § 3426.6.  Again assuming a June 2001 accrual date, absent tolling the misappropriation claim would have become time-barred in June 2004, and the contract claims in June 2005.  Under some circumstances, however, the California courts apply equitable tolling "to suspend or extend a statute of limitations." *Hatfield v. Halifax PLC*, 564 F.3d 1177, 1185 (9th

Cir. 2009) (applying California law). Specifically, the limitations period applicable to a given claim may be suspended during the pendency of any claim filed on the same grounds against the same defendants, whether filed in California or elsewhere. *See id.* Where equitable tolling applies, it applies with equal force during the pendency of any appeal from the dismissal of the earlier filed claim. *See Archdale v. American Internat. Specialty Lines Ins. Co.*, 154 Cal. App. 4th 449, 479 (2007). Thus, assuming equitable tolling and assuming a June 2001 accrual, the misappropriation claim would have become time-barred by not later than September 2008, but the contract claims would not have become time-barred in California until approximately August 2009, approximately seven months after Morris received RaveSim's assignment.

The California courts take three factors into consideration when deciding whether to apply the doctrine of equitable tolling:

> (1) timely notice to the defendant in the filing of the first claim; (2) lack of prejudice to the defendant in gathering evidence to defend against the second claim; and (3) good faith and reasonable conduct by the plaintiff in filing the second claim.

*Hatfield,* 564 F.3d at 1185; *citing Collier v. City of Pasadena*, 142 Cal. App. 3d 917 (1983). While the evidentiary record contains sufficient information to permit the conclusion that Cadence had timely notice that Morris filed his 2004 action against it, and that, on the counterfactual *arguendo* assumption that Morris would have filed against Cadence shortly after receiving RaveSim's assignment in January 2009 absent any insurmountable procedural impediment, his conduct would under those circumstances have been reasonable and undertaken in good faith, there is simply no evidence in the record from which a trier of fact could reasonably conclude that Cadence would have suffered no prejudice in gathering evidence to

defend against claims brought in 2009 by reason of the intervening delay of more than four years. To the contrary, any such conclusion on the basis of the evidence now before the court would necessarily be purely speculative. I therefore cannot conclude as a matter of law that the Cadence claims would have been equitably tolled in California during the pendency of Morris' 2004 action against Cadence, and thus cannot conclude that the claims could have been timely filed in California in January 2009 had Morris received assignment of the claims without covenanting not to exercise them.

Because the record does not permit the conclusion that, as a matter of law, Morris would have faced no procedural impediment to filing against Cadence in January 2009 absent his covenant not to sue, for purposes of resolving the Cadence-action defendants' motion I conclude that there is at least a question of fact as to whether the outcome of the 2007 action against RaveSim can be construed as a reliable indicator of whether a 2004 action against RaveSim to obtain assignment of the Cadence claims would have been successful. In light of that question of fact, there is necessarily an unresolved question as to whether the Cadence-action defendants' alleged negligence in the conduct of the 2004 action caused Morris to fail to obtain a recovery against Cadence in that action. Because the record does not permit me to conclude as a matter of law that Morris is not entitled to recover against the Cadence-action defendants in connection with his allegations of negligence in the conduct of litigation, the Cadence-action defendants' motion for summary judgment is denied as to Morris' claim against them to the extent premised on the Cadence-action defendants' alleged negligence in failing to join RaveSim as a party to the 2004 action against Cadence.

By contrast, the Cadence-action defendants' argument is well taken as to Morris'

Page 33 - OPINION AND ORDER

allegation that Zusman, Cook and Brecht were negligent in failing to recognize or argue in the 2004 action against Cadence that the "no-assignment" provision of the Simutech/Cadence agreement was unenforceable as a matter of applicable California law. Because Judge Aiken's discussion of the no-assignment provision was, as discussed above, necessarily dicta, the Cadence-action defendants' alleged failure cannot have caused Morris to suffer damages. The Cadence-action defendants' motion is therefore granted as to Morris' claim against them to the extent premised on negligent failure to recognize or argue in the 2004 action against Cadence that the no-assignment provision of the Simutech/Cadence agreement was unenforceable as a matter of applicable California law.

### CONCLUSION

For the reasons set forth above, Zusman's and the Sussman Shank defendants' motion (#61) for summary judgment is granted as to Morris' claim against those defendants to the extent premised on the allegation that defendants Zusman, Cook and Brecht were negligent in failing to recognize or argue in the 2004 action against Cadence that the no-assignment provision of the Simutech/Cadence agreement was unenforceable as a matter of applicable California law, granted as to Morris' prayer for damages in the amount of the recovery he would have obtained against Cadence had he prevailed in his 2004 action against it to the extent premised on the allegations that Zusman, Cook and Brecht were negligent in failing to recognize that the assignment provisions of the Settlement Agreement created only a conditional promise to assign rather than a perfected assignment and in failing to advise Morris of his need to satisfy conditions

/ / /

/ / /

Page 34 - OPINION AND ORDER

precedent before obtaining assignment of RaveSim's claims against Cadence, and otherwise

denied, and the Grenley Rotenberg defendants' motion (#68) for summary judgment is denied.


Dated this 28th day of July, 2011.

Honorable Paul Papak
United States Magistrate Judge